**UNITED STATES of America**

v.

**Rickie A. COCHRANE.**

**UNITED STATES of America**

v.

**Joni SEPLOCHA.**

**Crim. Nos. 88–065–01 P, 88–065–02 P.**

United States District Court,
D. Rhode Island.

June 9, 1989.

Edwin J. Gale, Asst. U.S. Atty., D.R.I., Providence, R.I., for plaintiff.

John F. Cicilline, Providence, R.I., for defendant Cochrane.

Lise Geschiedt and C. Leonard O'Brien, Providence, R.I., for defendant Seplocha.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Defendants Rickie Cochrane and Joni Seplocha have moved to suppress the fruits of a search of 875 Branch Avenue, Providence, Rhode Island. They have raised several issues as to the legality of the search, specifically:

1) whether the judge who issued the search warrant was acting as a "neutral and detached magistrate";
2) whether the affidavit was sufficient to establish the probable cause necessary for the search;
3) whether the search for drugs, requested in the Complaint to Search, was merely a pretext for a search for information about an armored car robbery;
4) whether the police officer who executed the warrant followed the proper procedure regarding knocking and announcing; and
5) whether the prosecutor transgressed the boundaries of permissible prosecutorial conduct.

The Government argues, in its memorandum, that some of these issues (1, 3 and 4) were raised for the first time at the hearing before the magistrate. I will not address this point, however, because my ruling is based on the insufficiency of the affidavit (2, above).

## THE SEARCH WARRANT

James P. Mullen, a Corporal of the Rhode Island State Police, signed a Complaint to Search and Seize Property and presented it, along with an affidavit also

signed by him, to Judge Albert DeRobbio of the District Court of the State of Rhode Island. The Complaint described the property to be searched for and/or seized as "Cocaine, Heroin, Marijuana and implements used for the administering [of] cocaine, heroin, marijuana, and records of controlled substance transactions and names and addresses and telephone numbers of customers and suppliers of controlled substances as well as proceeds from controlled substance transactions such as United States currency and also implements used in the packaging and sale of said cocaine, heroin and marijuana." The name of the owner or keeper of the property was listed as "Rickie A. Cochrane 3–14–52 alias John Doe" and "Joni Seplocha 11–11–52". The place to be searched was listed as "875 Branch Avenue Floor 1 rear Providence, R.I. described as a two story dwelling color beige and white numbered 875." The complaint also stated: "Your complainant prays that said warrant may be served in the nighttime for the reason that: This investigation has revealed that criminal activity is taking place during the evening hours." The Search Warrant recites the same information and is addressed to "An Officer authorized by law to execute the within warrant, Based on an affidavit of Corporal James P. Mullen". The Complaint, Search Warrant and affidavit are all dated May 18, 1988.

The Search Warrant states in printed text: "Complaint and affidavit having been made to me under oath, and as I am satisfied that there is probable cause for the belief therein set forth that grounds for issuing a search warrant exist, you are hereby commanded to diligently search the place or person herein described for the property specified...." Defendants now ask this Court to review that determination of probable cause, seeking a finding that there was no probable cause to support the issuance of the warrant and, therefore, that the fruits of the search should be suppressed.

## STANDARD OF REVIEW

These motions to suppress were assigned for hearing before the United States magistrate pursuant to 28 U.S.C. Section 636(b). *Accord* Federal Rule of Civil Procedure 72(b). Pursuant to that statute, the magistrate conducted a hearing on February 13, and 14, 1989, and submitted a recommendation for disposition of the matter, including proposed findings of fact. The magistrate recommended that none of the evidence seized during the May 1988 search of the Branch Avenue apartment be suppressed. The defendants filed timely objections to the proposed findings and recommendation, and the government timely responded. I then ordered a hearing to allow the parties to present additional evidence on certain aspects of the suppression motions; I heard the parties on March 30 and April 10, 1989.

The statute requires that the district judge "make a de novo determination of those portions of the ... specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence...." *See United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (discussing the de novo determination by the district judge).

■ Although I am required to make a de novo determination of several aspects of the recommended denial of the motion to suppress because defendants have made specific written objection to them, it must be noted that in reviewing the determination of probable cause made by the issuing judge, I do not consider what I would do if presented with this affidavit. Rather, I must make my determination according to this standard: was there a substantial basis for the issuing judge to find that probable cause to search existed. *Massachusetts v. Upton*, 466 U.S. 727, 728, 104 S.Ct. 2085, 2086, 80 L.Ed.2d 721 (1984). This review is made on the basis of the information presented to the issuing judge at the time the warrant was issued. A defective warrant cannot be resuscitated by consideration of additional information now avail-

able or even of information available when the warrant was obtained but which was not communicated to the issuing judge. *See United States v. Badessa*, 752 F.2d 771, 774 (1st Cir.1985) (special perception of law enforcement officers is inoperative to support probable cause unless it is communicated by them to the decision-maker, the issuing judge).

The source of information for the judge in determining that probable cause for the search did exist was the affidavit. Defendants contend that the affidavit was deficient in several ways. After considering all the evidence presented, I find that the affidavit was in fact deficient in that it did not provide sufficient information from which the issuing judge could find that probable cause to search the apartment for drugs and the other enumerated items existed.

### STANDING

The government has not raised the issue of standing, but the First Circuit has held that "Unless and until the 'standing' threshold is crossed, the *bona fides* of the search and seizure are not put legitimately into issue." *United States v. Aquirre*, 839 F.2d 854 (1988). For this reason, I note briefly that I find that these defendants do have the requisite reasonable expectation of privacy in the area searched (here, the apartment at 875 Branch Avenue) and proprietary interest in the items seized.

### The *Franks v. Delaware* issue

The defendants filed separate motions to suppress the fruits of a search of 875 Branch Avenue. On October 12, 1988, Cochrane filed his motion to suppress three guns found in the apartment, stating, inter alia, that information contained in the affidavit accompanying the warrant was false. Seplocha filed her motion to suppress all the fruits of the search on November 14, 1988, on the grounds that the search was conceived without probable cause and was illegally executed. In a memorandum in support of the motion to suppress, defendant Cochrane requested an evidentiary hearing at which he would show "by preponderance of evidence that the affiant of-

ficer made deliberate or recklessly false statements which require suppression." (Memorandum, 11/23/88, p. 7). Shortly thereafter, he filed an affidavit in which he swore:

I, Rickie Cochrane, being duly sworn upon oath depose and say:

1) I did not supply heroin, cocaine or marijuana to anyone.

2) That I made no sales to persons of those illegal substances from 875 Branch Avenue in Providence.

3) That I did not move from 51 Glendale Avenue to 875 Branch Avenue because I feared police surveillance, wiretaps or monitoring.

4) That during the week of May 10, 1988 I did not sell marijuana or heroin to anyone either at 875 Branch Avenue or elsewhere.

The Court first heard the parties on this motion on December 12, 1988. Counsel for the Government argued that Cochrane's affidavit was not sufficient to merit an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed. 2d 667 (1978) in that the statements therein contradicted allegations which were provided to the affiant, Corporal Mullen, by an informant.

Government counsel is correct in noting that the deliberate falsity or reckless disregard for the truth whose impeachment is permitted by *Franks* is *only* that of the affiant, not of any nongovernmental informant. 438 U.S. at 171, 98 S.Ct. at 2684. However, Cochrane's affidavit does challenge the affiant's own statement which appears on page 3 of the Mullen affidavit: "Your affiant's knowledge in this matter is predicated upon previous purchases of these illegal substances which he has made from both Cochrane and Seplocha at the above-mentioned address."

The Supreme Court in *Franks* stated that "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." 438 U.S. at 171, 98 S.Ct. at 2684. Required by the Supreme Court are "allegations of deliberate falsehood or of reckless disregard

for the truth, and those allegations must be accompanied by an offer of proof." *Id.* Cochrane's memorandum alleged "deliberate or recklessly false statements" and was supported by an offer of proof in the form of Cochrane's affidavit. The Court further stated that: "They [the allegations] should point out specifically the portion of the warrant that is claimed to be false, and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.* Here, the allegations failed to point out specifically the portion of the warrant affidavit that defendant claimed to be false and were not accompanied by a statement of supporting reasons or affidavits from witnesses. However, the First Circuit has pointed out that *"Franks* does not *proscribe* scrutiny of warrant affidavits in the absence of the substantial showing that that case specifies; *Franks* merely holds that subfacial challenges are not mandated to protect a defendant's constitutional rights unless the specified showing is made." *Brock v. Brooks Woolen Co.,* 782 F.2d 1066, 1069 (1st Cir.1986). I granted a *Franks* hearing, which revealed a false statement in the affidavit. It is to this issue that I now turn.

 In the affidavit, the affiant is Corporal James Mullen. Mullen states that he "is receiving information from a confidential and reliable informant...."

The affidavit states, at pages 2–3, that:

This affidavit is submitted in support of an application for a search warrant for the premises known as 875 Branch Avenue, floor one (1), Providence, Rhode Island, occupied by a certain Ricky A. Cochrane, DOB: 3/14/52, and Joni Seplocha, DOB: 11/11/52, and described as two (2) story dwelling, color beige and white, numbered 875. This informant is advising your Affiant that a narcotics nuisance is presently being conducted at the above-mentioned location which is being operated and controlled by Ricky A. Cochrane and Joni Seplocha. This informant has advised that both Cochrane and Seplocha are supplying heroin, cocaine, and marijuana to persons unknown to your Affiant's informant.

Your affiant's knowledge in this matter is predicated upon previous purchases of these illegal substances which he has made from both Cochrane and Seplocha at the above-mentioned address. This informant has provided your affiant with telephone number 401–861–6708, and is the telephone number at which to contact Cochrane and Seplocha, as both Cochrane and Seplocha have given the informant this telephone number at which to contact him.

The affiant Mullen stated, at the hearing before Magistrate DeCesaris, "I never bought drugs from Cochrane." (Tr., Nov. 14, 1988, p. 33). Mullen said "Well, obviously there's a word missing in part of that paragraph." (*Id.* at 34) and agreed that the sentence that begins "Your affiant ..." should read "Your informant ..." (*Id.* at 35). When Mullen was asked if he acknowledged that this was a deliberate falsehood, he answered "No"; when asked "What do you think it might be?", he said, "Obviously it's a mistake on my part the way it reads." (*Id.* at 36).

This admitted mistake is very important. The issuing judge may have attached great significance to the statement that the affiant, who described himself as a member of the Rhode Island State Police for 15 years, presently assigned to the Narcotics Unit (Affidavit, p. 1), predicated his knowledge in this matter upon previous purchases he had made of illegal substances from both defendants at 875 Branch Avenue.

The government in its memo states that "the probable cause here is strengthened solely because the facts were stated and conclusions were made by a seasoned narcotics officer," citing Professor LaFave for the observation that "the Supreme Court has made it clear that the expertise and experience of the officer making the affidavit are to be taken into account in applying the Fourth Amendment probable cause test (footnote omitted)." (Government's Response, March 28, 1989, p. 7). The Supreme Court would have allowed the issu-

ing judge to give much credence to this veteran officer's statement and I cannot say that the issuing judge did not do so. I simply cannot find, as the magistrate did, that the statement did not mislead the judge who issued the warrant.

The affiant having admitted that this statement was false, it is necessary to determine whether the inclusion of the statement was done "knowingly and intentionally, or with reckless disregard for the truth," rather than negligently or through innocent mistake. *Franks* does not require the suppression of the fruits of a search supported by an affidavit which contains a misstatement included through negligence or innocent mistake. 438 U.S. at 171, 98 S.Ct. at 2684. The magistrate concluded that after testimony was presented on this issue, he was "convinced by Corporal Mullen's demeanor and the frankness of his testimony that, although the Affidavit may not have been correct in the grammatical sense, Corporal Mullen did not intend to mislead the judicial officer who issued the warrant to believe that he, and not the informant, made these purchases." However, this conclusion speaks only to the issue of whether the misstatement was knowing and intentional; it does not decide whether its inclusion was reckless.

Given the facts of this case—that affiant had been conducting surveillance of defendant Cochrane over a period of several months (even before he moved to Branch Avenue), that affiant was a 15 year veteran of the State Police force, that affiant did not testify that he prepared the affidavit in haste—the inclusion of a false statement that expressly stated that affiant's knowledge was based on purchases of illegal substances which he has made from defendants appears reckless to this Court.

The determination that this misrepresentation was made with reckless disregard for the truth, contrary to the affiant's statement that it was a mistake, finds support in the recognition that "the analytical concepts of materiality and recklessness are often bound together." *United States v. Namer*, 680 F.2d 1088, 1092 (5th Cir. 1982). This misstatement was a very material, perhaps crucial, factor in the affidavit. It provided independent verification of the informant's tip that the defendants were operating a narcotics nuisance at the apartment. The rest of the affidavit, discussed below, provides very little information useful to an analysis of probable cause to search this apartment. This affidavit was written and presented to provide information to enable the state judge to decide whether a search warrant should issue. The Fourth Amendment clearly states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." This affidavit was offered as the constitutionally-required "Oath or affirmation." As such, the issuing judge relies on the statements contained therein. It behooves a police officer to make a thorough check of the affidavit to insure that the statements are true and complete. Although the error here might be thought slight, in that it hinges on one word (affiant) substituted for another (informant), the information conveyed by the misstatement is very different from the truth. A common-sense reading of this affidavit, *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), results in the belief that both affiant and informant purchased drugs from these defendants. To have allowed this misstatement to go to the issuing judge evinces the officer's "reckless disregard for the truth."

Having found that a false statement was included by the affiant in reckless disregard of the truth, the Court must now determine if probable cause could have been found on the basis of the affidavit *without* this statement. No deference can be accorded the probable cause determination of the issuing judge because it was made in reliance on an affidavit which was, we now know, untrue in part. Therefore, I must consider the affidavit, minus the untrue statement, and determine whether it provided probable cause for the intended search of 875 Branch Avenue.

### THE "PROBABLE CAUSE" DETERMINATION

The question of whether probable cause was shown to justify the search requires

this Court's careful examination. As the First Circuit has cautioned, since the demise of the mere evidence rule and other restrictions on the scope of the Fourth Amendment, the probable cause and particularity commands of that amendment are the only protections a citizen now has against a general search of her private papers. *United States v. Abrams*, 615 F.2d 541, 547 (1st Cir.1980).

■ In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court announced the test to be used in determining probable cause. Therein, the Court adopted an approach that required the issuing magistrate to consider the totality of the circumstances in determining whether there is "probable cause" to believe that contraband or evidence is located in a particular place and thus whether a search warrant should be issued. The standard of probable cause is the probability, not a *prima facie* showing, of criminal liability. *Id.* at 235, 103 S.Ct. 2330–31.

■ Applying the "totality-of-the-circumstances" approach to the "Complaint to Search and Seize Property and/or Person" and the attached affidavit in this case, I find that the State Police did not offer enough evidence to find that there was probable cause to believe that the articles to be searched for and/or seized, controlled substances and items related to their use and sale, would be found at the apartment in question.

Acknowledging that the Supreme Court has warned against a hypertechnical scrutiny of a search warrant, I have attempted to consider the papers submitted by Corporal Mullen in a commonsense way. *United States v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

The affidavit submitted by Officer Mullen in support of the request for a search warrant, and sworn to by him, states "it is your affiant's belief that Ricky Cochrane and Joni Seplocha are selling illegal substances and have illegal substances in their possession and control, along with other drug-related paraphernalia, at the previous-

ly-mentioned address [875 Branch Avenue]." The affidavit concludes:

Your affiant bases this belief on information supplied by the confidential informant, coupled with an independent investigation conducted by your affiant, that Ricky A. Cochrane and Joni Seplocha are in the criminal business of distributing controlled substances, namely, heroin, cocaine, and marijuana, in violation of the General Laws of the State of Rhode Island.

The affiant thus points the reader to the two sources of information for his belief: information from the confidential informant and the results of affiant's independent investigation.

First, I will consider the informant's information. The Supreme Court has noted: "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). Rigid legal rules are ill-suited to an area of such diversity. *Gates*, 462 U.S. at 232, 103 S.Ct. at 2329. This informant was himself a user of illegal narcotics and admitted to the affiant that he associates with drug dealers. (Affidavit, pp. 1–2.) The Supreme Court noted that the credibility of narcotics informants may often be suspect, as compared to an informant in a tax evasion case, for example, *Jaben v. United States*, 381 U.S. 214, 224, 85 S.Ct. 1365, 1370, 14 L.Ed.2d 345 (1965). Such an informant's trustworthiness must be carefully assessed.

The Supreme Court, in adopting the "totality-of-the-circumstances" analysis in *Gates*, rejected the "two-pronged test" which considered the informant's "veracity" or "reliability" independently of his "basis of knowledge." The Court professed that "there are persuasive arguments against according these two elements independent status" and said that these elements are "better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compen-

sated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability (citations omitted)." 462 U.S. at 233, 103 S.Ct. at 2329. I must analyze the informant's tip in this way, hoping to make "a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip" (*Id.* at 234, 103 S.Ct. at 2330) and avoid "an excessively technical dissection of [the] informant's tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate." *Id.*

Information bearing on the informant's "veracity" or "reliability" is scarce in this affidavit. With regard to the informant's track record, affiant states that the informant has provided affiant with information regarding drug trafficking which has lead to a seizure of a controlled substance and an arrest, and "in addition, this same informant is providing your affiant with information concerning the criminal activity of individuals not associated with this investigation." No mention is made of the status of these investigations, so no inference should be made as to resulting seizures, arrests or convictions. From these statements, the reader can see that the informant's information has led to the seizure of a controlled substance in one case but no convictions, at least not as of the date of the affidavit.

There are many ways to demonstrate an informant's veracity. Judge Moylan's article on the law concerning informant's tips, although written before *Gates,* is still applicable:

The question is whether the magistrate has been furnished with enough meaningful detail to make his own informed judgment on the issue of an anonymous informant's truthfulness, not whether arrests and/or convictions were somehow involved in the case.

*Hearsay and Probable Cause: An Aquilar and Spinelli Primer*, 25 Mercer L.Rev. 741 (1974). Here, the judge was provided only with the bare bones of a track record —there is no way to assess the credibility of the informant based on this record of the information he had given on past occasions.

The informant's tip is that "a narcotics nuisance is presently being conducted at the above-mentioned location [875 Branch Avenue] which is being operated and controlled by Ricky A. Cochrane and Joni Seplocha." How does the informant know this? According to testimony in the hearing before Magistrate DeCesaris, the first sentence of the first full paragraph on page 3 of the affidavit was supposed to read: "Your *informant's* knowledge in this matter is predicated upon previous purchases of these illegal substances which he has made from both Cochrane and seplocha at the above-mentioned address." But that sentence was misstated and must be excised, leaving only irrelevant evidence and evidence that may well be stale.

The affiant states that the informant advised that "both Cochrane and Seplocha have met him at various locations in the State of Rhode Island and he has obtained from them illegal substances after he has spoken with them about the sale and product (sic) of the illegal drugs, and has met them by pre-arrangement after these conversations have taken place over the previously-mentioned telephone number." This information does not bolster the assertion that drugs will be found at 875 Branch Avenue. A later statement in the affidavit reads: "During the week of May 10, 1988, your affiant was again in contact with the confidential informant and he advised that he had purchased marijuana and heroin from Ricky Cochrane and Joni Seplocha at their residence, as well as meeting them by a pre-arrangement, after discussing the sale of drugs over telephone number 401–861–6708." This statement provides the time frame of the conversation between affiant and informant but does not provide the more important time frame: when was the purchase made? During that week or ten months before? This sentence is the only attempt to document, with reference to a time period, a sale of drugs by Cochrane and Seplocha and it is fatally flawed, as defendants point out.

The First Circuit has long noted the importance of a reasonably specific averment of time in an affidavit supporting a search warrant. *United States v. Bonilla Romero,* 836 F.2d 39 (1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988); *United States v. Salvucci,* 599 F.2d 1094 (1979), *rev'd on other grounds,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rosencranz v. United States,* 356 F.2d 310 (1966). To hold valid a search warrant which states the date the affiant received the information of the sale without the date of the sale itself "would be to open the door to the unsupervised issuance of search warrants on the basis of aging information. Officers with information of questionable recency could escape embarrassment by simply omitting averments as to time", *Rosencranz,* 356 F.2d at 316, of the illegal activity so long as they reported the date that they received the information. The omission of a date has important repercussions: "Magistrates would have less opportunity to perform their '[neutral] and detached' function." Id. at 317. Ruling on an affidavit without a time averment, the Court of Appeals in *Rosencranz* stated: "If the affidavit in this case be adjudged valid, it is difficult to see how any function but that of a rubber stamp remains for [the issuing judge]." *Id.*

Even if the tip was reported by affiant in this defective way, the search warrant might have provided a time frame through other sources. *Bonilla Romero,* 836 F.2d at 46 (when an affidavit in support of a search warrant does not contain the date of the activities therein alleged, but is factually related to other information before judge which does contain date, it is permissible to draw the inference that the events took place in close proximity to the date given). Here, the only alternative source of information was the investigation by the state police.

In this case, the state police attempted to corroborate the informant's tip by surveillance of the apartment house at 875 Branch Avenue and checking the accuracy of some of the information provided by the informant. The affiant checked with New England Telephone to verify the telephone number provided by the confidential informant as Cochrane's, which it was. There is no assertion that this phone number was unlisted; it may well have been accessible to anyone with a telephone directory. Affiant also consulted the registry of motor vehicles to ascertain the license plate numbers of cars registered to either defendant; two cars were registered to Seplocha and one car to Cochrane.

The surveillance was conducted by affiant and other members of the Rhode Island State Police Narcotics Unit. These officers reportedly observed Cochrane and Seplocha arriving and departing from 875 Branch Avenue, and entering and leaving the three automobiles registered to them. The two surveillances of which the affidavit provides dates are May 10, 1988 when Detective Kennedy observed Joni Seplocha leaving the building and entering one of the cars at 9 a.m., and May 11, 1988 when Detectives Long and Dias observed Cochrane leave the building and enter another of the cars at 6:15 a.m. The affidavit states, "The surveillance was then terminated by detectives." The facts uncovered by the surveillance are not incriminating in the least. It must be noted that the report of the surveillance revealed no fact which made the presence of drugs at the apartment more likely. Not one person, other than defendants, was seen entering or leaving the premises. The police did not see the confidential informant near the premises, nor any parade of people or unusual vehicular traffic associated with a "narcotics nuisance."

The remainder of the warrant affidavit is irrelevant and/or stale to the issue of probable cause to search the apartment for controlled substances as of May 18, 1988. It is mere surplusage and will not be discussed in detail.

In sum, I find that the affidavit is threadbare. Under the totality-of-the-circumstances analysis of *Gates,* I find that there was no substantial basis for the issuing judge's determination, on the basis of this affidavit, that there was probable cause on May 18, 1988 to search 875 Branch Avenue for controlled substances and related items.

## 32

### THE "GOOD FAITH" EXCEPTION

■ The "good faith" exception to the exclusionary rule does not apply to this situation. The Supreme Court in *United States v. Leon* expressly stated: "Suppression ... remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware*, 438 U.S. 154 [98 S.Ct. 2674, 57 L.Ed.2d 667] (1978)." 468 U.S. 897, 923, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984). Having found that Officer Mullen was reckless in preparing the warrant affidavit, the evidence discovered through the subsequent search must be suppressed. *See United States v. Fuccillo*, 808 F.2d 173 (1st Cir.), *cert. denied*, 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 374 (1987).

### THE EXCLUSIONARY RULE APPLIED

The Supreme Court in *Franks* provided the blueprint for the foregoing analysis and the inevitable resolution: "In the event that ... the allegation of perjury or reckless disregard is established by defendant by a preponderance of the evidence, and with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." 438 U.S. at 155–56, 98 S.Ct. at 2675–76.

Therefore, the fruits of this search, including the firearms referred to in defendant Cochrane's motion to suppress and the statement of defendant Seplocha discussed in her motion to suppress, will be suppressed.

Furthermore, I hereby order that all articles seized which are not contraband be returned to these defendants immediately.